```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                      CASE NO. 17-cr-20604-CMA
 3

 4     UNITED STATES OF AMERICA,        Miami, Florida

 5              Plaintiff,              May 26, 2020

 6         vs.                          9:04 a.m. to 9:46 a.m.

 7     WILBER ROBERTO CASTRO            Courtroom 12-2
       VALENCIA,
 8                                      (Pages 1 to 23)
                Defendant.
 9     _____

10                SENTENCING - VIDEO TELECONFERENCE
               BEFORE THE HONORABLE CECILIA M. ALTONAGA,
11                  UNITED STATES DISTRICT JUDGE

12     APPEARANCES:

13      FOR THE GOVERNMENT:    ROBERT J. EMERY, ESQ.
                               Assistant United States Attorney
14                             99 Northeast Fourth Street, Suite 700
                               Miami, FL  33132-2131
15                             (305) 961-9000
                               robert.emery@usdoj.gov
16
        FOR THE DEFENDANT:     RICHARD K. HOULIHAN, ESQ.
17                             Richard Houlihan, P.A.
                               25 Southeast Second Avenue, Suite 1105
18                             Miami, FL  33131-1605
                               (305) 536-1191
19                             rkhoulihan@aol.com

20      Also Present:          James Thomas, USPO
                               Guiomar Emedan, Interpreter
21

22      REPORTED BY:           STEPHANIE A. McCARN, RPR
                               Official Court Reporter
23                             400 North Miami Avenue
                               Twelfth Floor
24                             Miami, Florida 33128
                               (305) 523-5518
25                             Stephanie_McCarn@flsd.uscourts.gov
```

<u>I N D E X</u>

<u>WITNESSES</u>

<u>WITNESSES FOR THE GOVERNMENT:</u>                                    <u>Page</u>


<u>WITNESSES FOR THE DEFENDANT:</u>                                     <u>Page</u>


<u>EXHIBITS IN EVIDENCE</u>                        <u>MARKED</u>     <u>ADMITTED</u>



<u>MISCELLANEOUS</u>

Proceedings.......................................    <u>Page</u>
                                                          3
Court Reporter's Certificate.....................    23

```
 1          (The following proceedings were held at 9:04 a.m.)

 2              COURT SECURITY OFFICER:  All rise.

 3              THE COURT:  Good morning.

 4              United States and Wilber Castro Valencia.  Please

 5      state your appearances.

 6              MR. EMERY:  Good morning, Your Honor.  Robert Emery on

 7      behalf of United States.

 8              THE COURT:  I can't hear you, Mr. Emery.

 9              MR. EMERY:  Judge, can you hear me now?

10              THE COURT:  Not very well.

11              MR. EMERY:  Mr. Houlihan, can you hear me okay?

12              MR. HOULIHAN:  Yes, I can.

13              THE COURT:  It's a little better now.  Thank you.

14              MR. EMERY:  Okay.  Judge, Robert Emery on behalf of

15      the United States.

16              MR. HOULIHAN:  Good morning, Judge.  Richard Houlihan

17      on behalf of Mr. Castro Valencia.  And in my rear and keeps

18      looking at me, the investigator who's worked sedulously with

19      me, Isaac Rodriguez.

20              THE COURT:  Good morning.

21              Mike, I need to make it louder.

22          (Pause in proceedings.)

23              THE COURT:  Very good.  Thank you so much.

24              And we have Mr. Thomas from Probation?

25              PROBATION OFFICER:  Yes.  Good morning, Judge.
```

1       James Thomas on behalf of United States Probation.

2             THE COURT:  Good morning.

3             And we have Mr. Castro Valencia assisted by the

4       court's interpreter.

5             Mr. Castro Valencia, are you hearing us all right?

6             THE DEFENDANT:  Yes, I do.

7             THE COURT:  If at any time you do not hear one of the

8       speakers, please alert us, raise your hand, say something so

9       that we are aware that you have not been able to hear what has

10      been said.

11            We are here this morning, Mr. Castro Valencia, for

12      your sentencing hearing.  And you are appearing and

13      participating in your sentencing hearing at the federal

14      detention center, and we're accomplishing this by video

15      teleconference.

16            So I would like to ask you some questions regarding

17      your waiver of your right to be present in the courtroom

18      physically, so I would ask you to please raise your right hand.

19        (The Defendant was sworn.)

20            THE DEFENDANT:  Yes, Your Honor, I swear to tell the

21      truth.

22            THE COURT:  Thank you.

23            Mr. Castro Valencia, have you taken any drugs or

24      alcohol in the last 48 hours?

25            THE DEFENDANT:  No, Your Honor.

1       THE COURT:  And you are an attorney from Colombia; is

2  that correct?

3       THE DEFENDANT:  Yes, Your Honor, I am an attorney.

4       THE COURT:  Have you consulted with Mr. Houlihan about

5  consenting to appear at a critical proceeding such as a

6  sentencing hearing in this case by video teleconference?

7       THE DEFENDANT:  Yes, Your Honor.  I previously spoke

8  to my attorney, and I did accept to appear by video conference.

9       THE COURT:  Do you understand that you are guaranteed

10  the right to be present in person at proceedings in this case

11  if your presence is critical to the outcome of the proceeding

12  and contributes to its fairness?

13       THE DEFENDANT:  Yes, Your Honor.  I do understand, and

14  I know that this will be a fair hearing, so on that regard I am

15  very confident.

16       THE COURT:  Furthermore, do you understand that the

17  guaranteed right to be present in person means the right for

18  you to be here in the courtroom along with your attorney, the

19  prosecutor and myself?

20       THE DEFENDANT:  Yes, Your Honor.  I do understand, but

21  I am aware that I would like to do it through this video

22  conference.

23       THE COURT:  And do you understand that your waiver of

24  the guaranteed right to be present in person, in the courtroom,

25  for this critical proceeding and your consent to appear by

```
 1    video teleconference are your decisions and your decisions
 2    alone to make?
 3             THE DEFENDANT:  Yes, Your Honor.
 4             THE COURT:  And I know you've said so before,
 5    Mr. Castro Valencia, but are you waiving your right to be
 6    present in person, in the courtroom, at today's sentencing
 7    hearing?
 8             THE DEFENDANT:  Yes, Your Honor, I do waive that
 9    right.
10             THE COURT:  Do you consent or not consent to appear by
11    video teleconference at today's hearing?
12             THE DEFENDANT:  Yes, Your Honor, I do consent.
13             THE COURT:  And are you satisfied with the services
14    that you have received from your attorney, Mr. Houlihan?
15             THE DEFENDANT:  Yes, Your Honor.  He has been
16    appointed to me by the State, and I am totally pleased with the
17    attorney that I have been assigned.
18             THE COURT:  Have you had adequate time to consult with
19    Mr. Houlihan about your guaranteed right to be present in
20    person, in the courtroom, at today's sentencing hearing and
21    your waiver of that guaranteed right?
22             THE DEFENDANT:  Yes, Your Honor, we did have a
23    discussion regarding all the details about this hearing, and I
24    am fully aware of it, and I did give him my consent that I may
25    appear in this manner.
```

```
 1          THE COURT:  Has anyone made to you any promises or
 2   representations to persuade you to waive your right to be
 3   present in person, in the courtroom today, and/or to consent to
 4   appear today by video teleconference?
 5          THE DEFENDANT:  No, Your Honor, there have been no
 6   promises on behalf of the Defense regarding this hearing, and
 7   it has been through my own free will that I appear.
 8          THE COURT:  Has anyone threatened you or coerced you
 9   to waive your right to be present in person today and to
10   consent to appear by video teleconference?
11          THE DEFENDANT:  No, nobody has threatened or forced me
12   to be here.
13          THE COURT:  Mr. Houlihan, are you satisfied that the
14   Defendant's waiver of the guaranteed right to be present in
15   person, in the courtroom, and his consent to appear by video
16   teleconference are in the best interests of your client
17   considering all the circumstances in this case?
18          MR. HOULIHAN:  Yes, Judge.
19          THE COURT:  It is the finding of the Court that the
20   Defendant is fully competent and capable to waive his
21   guaranteed right to be present in person at today's sentencing
22   hearing and to consent to appear by video teleconference.  I
23   find the Defendant understands his guaranteed right to be
24   present in person at proceedings if his presence is critical to
25   the outcome of the proceeding and would contribute to its
```

1    fairness; that the Defendant understands the nature of the

2    proceeding today; that he has knowingly and voluntarily waived

3    his guaranteed right to be present in person at today's

4    proceeding and has knowingly and voluntarily consented to

5    appear today by video teleconference.

6            I find that the Defendant's waiver of his guaranteed

7    right to be present and his consent to appear by video

8    teleconference today have been made after consultation with his

9    attorney.  I find that the Defendant's waiver of the guaranteed

10   right to be present and his consent to appear by video

11   teleconference have been made without any promises or

12   representations, coercion or duress.

13           I therefore find that today's hearing cannot be

14   further delayed without serious harm to the interest of

15   justice, and therefore this proceeding will be held by video

16   teleconference.

17           Mr. Castro Valencia, have you had the opportunity of

18   reviewing with your attorney the presentence investigation

19   report?

20           THE DEFENDANT:  Yes, Your Honor, we had the

21   opportunity to review it in depth and to study the result of

22   that examination.

23           THE COURT:  Thank you.

24           So I'll be hearing first from Mr. Emery, the

25   prosecutor, then from your attorney, and then from you.

1         Mr. Emery.

2         MR. EMERY:  Thank you, Your Honor.

3         As Your Honor well knows, the guideline range here,

4    the advisory guideline range is 135 months to 160 months.  This

5    Defendant qualifies for safety valve.  He has met, at least

6    over the phone, with the Government on one occasion, and,

7    hopefully, we'll be able to set up more debriefs with him in

8    the future.  But we're just now at a point where we're able to

9    get to a point of filing anything with the court, but hopefully

10   we will be back in front of the Court on that.

11        This conspiracy involves thousands of kilograms of

12   cocaine that were being sent from Colombia to -- and ultimately

13   to United States via Central America on go-fast vessels.

14        This Court has already sentenced two of the

15   Defendants.  One Defendant, Falla Ramirez, received 176 months;

16   he was one of the leaders of the conspiracy; and then Alex

17   Duvan Salazar Villareal was sentenced to 84 months, and the

18   remaining Defendants are either fugitives or pending

19   extradition to United States.  And as soon as flights resume

20   from Colombia to United States, hopefully they'll be here.

21        This particular Defendant, Your Honor, the Government

22   is able to prove at least one seizure with respect to this

23   Defendant had logged over 800 kilograms of cocaine, which is a

24   substantial amount of cocaine, millions and millions of dollars

25   in street value in the United States.  And as this Court knows,

```
 1    that once the cocaine gets to United States, it is then stepped
 2    on and reduced and flooded into the streets of United States
 3    and ultimately Miami, affecting, unfortunately, adversely the
 4    lives of countless Americans and their families, leading to
 5    drug addiction, death and crime.
 6            So, Your Honor, the advisory guideline range again is
 7    at the low end, 135.  With respect to the other Defendant,
 8    Salazar Villareal, we also had asked for 135 months.  I do see
 9    that their roles are somewhat -- somewhat similar in
10    coordinating the go-fast vessels, the individuals, the crew
11    members who were put on the boats, the -- and in that case, the
12    Court did sentence him to 184 months over Government's
13    objection.  So the Government would again ask for 135 months
14    but understands that the Court did sentence a similarly
15    situated Defendant to -- to 84 months.
16            THE COURT:  Thank you very much.
17            Mr. Houlihan.
18            MR. HOULIHAN:  Judge, it's a pleasure to see you
19    again.
20            THE COURT:  Nice to see you.
21            MR. HOULIHAN:  I just want to let you know, I want to
22    thank Mr. Thomas for his professionalism.  In these days, we
23    went over to his office, had the PSR interview.  And also the
24    very thorough PSR that he compiled, especially with the social
25    aspect.
```

```
 1              Can you hear me okay?
 2         THE COURT:  Yes.
 3         MR. HOULIHAN:  Okay.  I am asking, pursuant to 3553,
 4    two main things.  One under the characteristics of the
 5    Defendant, and number two under the personality.  Those are the
 6    two things I'm really going on and would ask you to consider
 7    today.
 8              We agreed the low end is 135.  I am asking for a
 9    similar sentence, if not even lower, for -- than Villareal, who
10    had 84 months.  As the PSR indicates under paragraphs 25 and
11    26, the same phraseology was used.  Villareal delivered and
12    coordinating maritime shipments, Castro Valencia delivered and
13    coordinated maritime shipments.  Their roles are pretty
14    similar, although Villareal was held responsible for 1553
15    kilograms, and Castro Valencia 831 kilograms, which is an
16    86 percent difference.
17              Most importantly, if Your Honor reads the acceptance
18    and responsibility statement.  That's how Mr. Castro Valencia
19    presented himself to me from the very get-go.  To use the word
20    "ashamed" is really applicable.
21              He grew up in Tumaco, as the PSR indicates, which is a
22    relatively -- I'm told, I've never been to Colombia, but
23    relatively a poor, I don't know if city is the right word, town
24    on the -- on the water.  He's been a good father.  He has three
25    children.  His wife named Darling, who is mentioned on page --
```

1    in Paragraph 48, has maintained religious contact with

2    Mr. Rodriguez, who's here.  If you ever wish to ask

3    Mr. Rodriguez anything, he will answer any of your questions.

4    My Spanish is limited, that's why Mr. Rodriguez is -- one of

5    the reasons he's assisted me, you know, with this case.  She

6    loves her husband.  He had -- they have one child together,

7    who's three.  He's been a good father.  She knows that he

8    had -- prior to their marriage had two children, as the PSR

9    indicates.

10         Again, he was paying -- it sounds hollow, but he was

11   paying for child support for both those -- both his children.

12   He's a good father.  He's basically a class act, who

13   understands he made a choice here that was wrong.  And he's

14   going to -- and he is suffering for it as -- as he has said in

15   his acceptance statement, how his family, I -- I -- he says,

16   quote, I feel I've let down many -- many people.  I am trying

17   to rectify by cooperating.  That's in Paragraph 30.

18         I also wanted to let you know that I appreciate --

19   he's met with the agents twice, most recently last Thursday in

20   the evening.  FDC very timely set up an evening teleconference

21   for 30 minutes, and the agents came in here.  And I appreciate

22   it.  It's kind of going above and beyond after they're working,

23   you know, a full day.  Mr. Castro Valencia has cooperated.  I

24   hope that he will continue and receive some sort of benefit

25   from it.

1           I would ask you to pay special note, he -- as the PSR

2    indicates, he has no history of mental or emotional problems.

3    He has no history of drug use.  What is -- he does have a

4    history of -- his mom, who he was close to, died when he was

5    45, with cancer.  He was the oldest of four.  He stopped his

6    studies for financial reasons, but also he had certain

7    responsibilities to help with the younger, the three younger

8    kids.

9           He began studying law, and he did, in fact, receive in

10   February of 2019 a law license.  On paragraph -- and I think it

11   says a lot.  On Paragraph 67, it talks about how, in 2017,

12   quote, The Defendant and his wife opened a loan with the

13   Lavienda (phonetic) Bank in Colombia to assist with the medical

14   bills and breast cancer treatment for his grandmother for who

15   he was caring.  The loan's current balance is $20,000.

16          This is a guy who has -- he's a family man.  He --

17   through his hard work and support of other people, for

18   instance, it wasn't just him, he was able to go to school,

19   finish his school, get his law license.  But to him family

20   comes first.  The loan he took out, you know, for his

21   grandmother, I think indicates among other things inferentially

22   that he is not involved heavily in this matter.  He made a

23   choice, he pled guilty as you know.  He's always accepted that.

24          I would ask you, I mean, you've been through these

25   sentencing hearings many times.  I know you have read the PSR,

```
 1   and I know attorneys like to talk, so I just think I'm going to
 2   stop, quite frankly, because I think if you had specific
 3   questions or any questions of me or Mr. Rodriguez, please,
 4   we're here for that purpose.
 5          I would ask you to sentence my client as you did
 6   Mr. Villareal.  He has been in custody, as you know, I mean,
 7   he's been in La Pinota -- okay, I'm sorry, La Picota.  My
 8   calculation was that he was there for 536 days awaiting coming
 9   up here.  He agreed to come here, and he's just delayed.  And
10   he's been in custody here at FDC for 158 days, which is a total
11   of 694.  I also would ask you to consider, you know, giving him
12   all sorts of credit.
13          So the bottom line I'm asking if you would consider
14   it, and I would ask you to -- I will beseech you to sentence
15   him at worst as you did Mr. Villareal.
16          MR. EMERY:  Judge, could I just respond to a couple
17   points?
18          THE COURT:  Let me just ask one question of
19   Mr. Houlihan.
20          You want credit time served since when?
21          MR. HOULIHAN:  He -- he was incarcerated, according to
22   the PSR, July 2, 2018.  He left -- he left there on December
23   20, 2019, which is my calculation of 365 days in 2018, from
24   July 2nd to July 1st, for that one-year period, that's 365
25   days.  And then July 2, 2019, until he left December 20th is
```

1    171 days.  That's how I get that figure.

2          He -- he came here December 20th, and my calculation

3    up to today is 158 days.  That's how I got those two figures,

4    Your Honor.

5          THE COURT:  Thank you.

6          Mr. Emery?

7          MR. EMERY:  Yes, Judge.  Thank you.

8          Just briefly, Your Honor.  Just for the Court to keep

9    in mind that kind of where this Defendant is in the conspiracy,

10   he's in the middle.  You can't forget about the guys on the

11   boats, the uneducated fishermen who are paid paltry sums in

12   order to get on those boats, and the Defendant who was

13   coordinating that load with the crew members.

14         So as this Court knows, it's typical, I've been in

15   front of Your Honor, now -- now that they qualify for safety

16   valve that the boat guys would receive anywhere from, you know,

17   as low as 60 months to somewhere -- sorry, 80 months.  So I

18   think it's important to keep that in mind, and that although

19   they're -- the boat guys are not named in the conspiracy, they

20   are unnamed coconspirators.  And this Defendant obviously was

21   able to get himself an education.  In fact, he got a law

22   license.  So if anyone should know better, it's this Defendant,

23   compared to the guys who were put on the boats and who appear

24   before this Honor, who are uneducated, can hardly even write

25   their names more often than not.

1             So -- so I think it's -- the Defendant should at least

2  be sentenced at the same as Mr. Salazar Villareal, although the

3  Government, again, disagreed with the Court's ultimate sentence

4  in that and has stated that we would ask for 135 months, but we

5  just wanted the Court to -- remind the Court of kind of the

6  overall conspiracy.

7             Thank you.

8             MR. HOULIHAN:  Can I say one other thing, Judge?

9             THE COURT:  Yes, of course.

10            MR. HOULIHAN:  I just also want to thank Mr. Emery

11 professionally.  He has been a pleasure to work with.  He's

12 very -- he's a bit demanding.  But one instance, Mr. Rodriguez

13 and I were going through discovery, tapes, they were in

14 Spanish, on a Friday evening, and we had a problem opening up

15 to listen to the tapes.  And I contacted through e-mail

16 Mr. Emery, who responded within 15 or 20 minutes and helped us.

17 And I just want to let you know I appreciate it, as an

18 attorney.  And I appreciate Mr. Emery's professionalism.

19            That's all.

20            THE COURT:  Thank you.

21            Mr. Emery, I would ask you to differentiate for me the

22 roles of Mr. Castro Valencia and Mr. Salazar Villareal.

23            MR. EMERY:  Your Honor, the roles were the same.  I

24 mean, they were involved in communicating with the crew members

25 when they were out at sea, and that's exactly what -- what the

1    Government would be able to prove in this case that this

2    Defendant was doing.  So based on the evidence that we had and

3    what we would prove, Your Honor, and can prove, their -- the

4    roles were the same.

5          THE COURT:  Their roles are the same, but Mr. Salazar

6    Villareal is being held accountable for almost double the

7    kilograms of cocaine that Mr. Castro Valencia is, can you

8    explain that?

9          MR. EMERY:  Well, Your Honor, it's not that -- while

10   the Government agreed to take out the -- this Defendant's name

11   in the -- in the second load, it's not -- it's just that the

12   Government is not in position to prove it up.  It's not that

13   we're saying he was not involved in that load, but, Your Honor,

14   it's another thing to be able to prove it up in court.

15         So the Government, based on looking at the totality of

16   the circumstances, decided not -- not to pursue that second

17   load.  You know, given the situation that we find ourselves in,

18   as far as, you know, limited resources and what we can do, you

19   know, given that the minimum amount is 450, which he was more

20   than over the 450, you know, I just felt it was the best use of

21   everyone's time not to pursue that -- that second load.

22         So I don't know if that answers your -- the Court's

23   question or not, but that's -- that's why, you know, we only

24   held him accountable for -- for that -- for that one load.

25         THE COURT:  Thank you.

```
 1            Mr. Castro Valencia, is there anything you would like
 2   to say now before I announce your sentence?
 3            THE DEFENDANT:  Yes, Your Honor.
 4            First of all, I would like to say good morning to
 5   everyone and to say that, yes, I have been for a while now
 6   awaiting this day so that my situation could be finally
 7   defined.  I also would like to apologize, to say to God how
 8   sorry I am for these mistakes and for the negative situation I
 9   find myself in.  And then I would like to say how ashamed I am.
10   I apologize to my family, to my children and to my wife for
11   this situation I have put them in.
12            I also believe that the best way to make up for this
13   situation is to cooperate with the Government, with those in a
14   position of authority.  And let me take this opportunity to say
15   to the U.S. Attorney that I will always be willing to cooperate
16   and to help whenever I am needed.  I think that the best way to
17   do so is to help this country and to clear up everything that
18   has happened in this situation.
19            I also would like to say to you, Your Honor, that I am
20   willing to become a better person, and that I am also well
21   disposed to being a good attorney when I leave here in the
22   future, which I hope will be soon.  I'd like to thank you, to
23   thank the U.S. Attorney and to thank my attorney as well.
24            THE COURT:  Thank you very much.
25            And is there anything else that, Mr. Houlihan, either
```

1  you or Mr. Emery would like to say before I announce sentence?

2          MR. HOULIHAN:  No, not from the Defense, Your Honor.

3          MR. EMERY:  Nothing from the Government.  Thank you.

4          THE COURT:  Mr. Castro Valencia, I have carefully

5  considered the information in the presentence investigation

6  report.  You are somewhat unique from my experience in handling

7  many similar cases.  The Defendants who come before me

8  generally are uneducated.  They generally have grade school

9  education, work mostly as farmers or fishermen under very poor

10  socioeconomic conditions and become involved in moving cocaine

11  on go-fast vessels, the final destination of which will be the

12  United States, out of financial desperation.

13          You're far different from those Defendants and from

14  your codefendants in that you are, of course, as we've all

15  addressed, a licensed attorney.  I note your history and

16  characteristics.  I note the nature and circumstances of the

17  offense conduct.  It's a serious offense.  There is obviously

18  the need to promote respect for the law, the need to provide

19  deterrence to your fellow countrymen and others who may be

20  similarly tempted to engage in the activities that you

21  participated in.

22          Having given careful consideration to all of these

23  factors in 18 U.S. Code, Section 3553, noting what it is that

24  the advisory guidelines recommend by way of a sentence and

25  keeping in mind the sentences that I have given to two of your

codefendants, it is the judgment of the Court that you are committed to the Bureau of Prisons to be imprisoned for a term of 84 months as to Count 2.

I find that you're not able to pay a fine.

Upon release from imprisonment, you will be on supervised release for two years as to Count 2.  Within 72 hours of release, you will report in person to the Probation office in the district to which you are released.

While on supervised release, you will comply with the mandatory and standard conditions of supervision.  Those include not committing any crimes, being prohibited from possessing a firearm or other dangerous device, not unlawfully possessing a controlled substance and cooperating in the collection of DNA.

You will also comply with the following special conditions:  You will surrender to Immigration for removal following imprisonment.  You will comply with the permissible search requirement and the unpaid restitution, fines or special assessments that are noted in Part F of your presentence investigation report.  You must pay the United States a special assessment of $100.

You are to be given credit for time served since July 2nd of 2018.

Now that the sentence has been imposed, does the Defendant or his attorney object to the Court's findings or the

1   manner in which the sentence was announced?

2         MR. HOULIHAN:  No, Your Honor.

3         THE COURT:  Mr. Castro Valencia, you have the right to

4   appeal your sentence.  Any notice of appeal must be filed

5   within 14 days after entry of the judgment.  If you're unable

6   to pay the cost of an appeal, you may apply for leave to appeal

7   *in forma pauperis*.

8         Are there any other requests, Mr. Emery?

9         MR. EMERY:  Yes, the Government would move to dismiss

10  the remaining counts.

11        THE COURT:  And those counts are dismissed.

12        And, Mr. Houlihan, any requests for placement?

13        MR. HOULIHAN:  Yes, ma'am, one.  McRae Correctional

14  Institute.

15        THE COURT:  Which one?

16        MR. HOULIHAN:  McRae.

17        THE COURT:  McCrane?

18        MR. HOULIHAN:  McRae, M-C-C-R-A-E [*sic*].

19        THE COURT:  McRae.  All right.  I will include that

20  recommendation.

21        MR. HOULIHAN:  All right.  Thank you.

22        THE COURT:  Mr. Castro Valencia, good luck to you and

23  to your family.

24        THE DEFENDANT:  Thank you, Your Honor.  Very kind.

25        THE COURT:  And you all have a good day.

```
1              MR. HOULIHAN:  You too.

2              MR. EMERY:  Thank you, Your Honor.

3              THE INTERPRETER:  Could I ask my attorney something?

4              THE COURT:  Of course.

5         Do you want this off the record, Mr. Houlihan?

6              MR. HOULIHAN:  Yes, ma'am.

7              THE COURT:  All right.

8              MR. HOULIHAN:  Please.

9              THE COURT:  Mike --

10             THE INTERPRETER:  My attorney, could you please --

11             THE COURT:  One second.  One second.

12        This is off the record.

13        End it for me.  And allow them to be communicating

14   without the prosecutor and me.

15             MR. EMERY:  Okay.  Judge, I'm going to log off.

16      (An off the record discussion was held.)

17             THE INTERPRETER:  This is the interpreter.  Can we go

18   ahead now?

19             THE COURT:  One second.

20      (Pause in proceedings.)

21             MR. HOULIHAN:  Thank you.

22             THE DEFENDANT:  Your Honor and the interpreter, thank

23   you very much.

24             THE COURT:  Thank you.

25      (The proceedings adjourned at 9:46 a.m.)
```

1             **C E R T I F I C A T E**

2

        I hereby certify that the foregoing is an

3
   accurate transcription of the proceedings in the

4
   above-entitled matter.

5

6

7    __01/12/21__
         DATE                  STEPHANIE A. McCARN, RPR

8                              Official United States Court Reporter
                               400 North Miami Avenue, Twelfth Floor

9                              Miami, Florida 33128
                               (305) 523-5518

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25